FILED
CLERK

4:09 pm, Sep 06, 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

STEPHANIE ROMAN,

                Plaintiff,

        -against-

RGS FINANCIAL, INC.,

                Defendant.

--------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-04917 (ADS)(AKT)

**APPEARANCES:**

**Barshay Sanders, PLLC**
*Attorneys for the Plaintiff*
100 Garden City Plaza Suite 500
Garden City, NY 11530
      By:    David M. Barshay, Esq.,
               Jonathan Mark Cader, Esq.,
               Craig B. Sanders, Esq., Of Counsel.

**Lippes Mathias Wexler Friedman LLP**
*Co-Counsel for the Defendant*
50 Fountain Plaza Suite 1700
Buffalo, NY 14202
      By:    Brendan Hoffman Little, Esq.,
               Richard M. Scherer, Esq.,
               Thomas J. Gaffney, Esq., Of Counsel.

**Malone Frost Martin PLLC**
*Co-Counsel for the Defendant*
8750 N. Central Expressway
NorthPark Central, Suite 1850
Dallas, TX 75231
      By:    Eugene Xerxes Martin, IV, Esq., Of Counsel.

**SPATT, District Judge**:

On August 21, 2107, plaintiff Stephanie Roman (the "Plaintiff") commenced this action

against defendant RGS Financial, Inc. (the "Defendant") for alleged violations of the Fair Debt

Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") stemming from the Defendant's

1

purported failure to disclose that interest, late fees and/or other fees were accruing in a collection letter pertaining to a debt owed by the Plaintiff.

Presently before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P" or "Rule") 56. For the following reasons, the Court denies the Plaintiff's motion for summary judgment and grants the Defendant's motion for summary judgment in its entirety.

## I.  BACKGROUND

The Plaintiff incurred a $3,981.89 debt (the "Debt") to Capital One, N.A. ("Capital One") at Koh's Department Stores Inc., which was placed with the Defendant for collection on July 17, 2016.

On August 18, 2016, the Defendant sent a collection letter to the Plaintiff, hereinafter referred to as the "Letter." The top right corner of the Letter contained an "Account Information" table which identified Capital One as the creditor, explained the debt was regarding Kohl's Department Stores Inc., provided the amount owed, $3,981.89, and contained a "reduction offer" of $2,389.14.  The letter stated:

> RGS Financial, Inc. has been assigned to provide a resolution on the above stated account. Associates are available to assist you. We're here to help you, but we need you to act. Please decide what works for you.
>
> ☐ You can resolve your account, without talking to an associate, by visiting our secure, private website at https://www.myrgs.com to negotiate and pay anytime, day or night.
>
> ☐ You can pay $3,981.89 in full or make two payments of $1,990.94 or three payments of $1,327.29.
>
> ☐ You can resolve your account at the reduced amount of $2,389.14 or make two payments of $1,194.57, or three payments of $796.38.
>
> Call 866-941-8600 or visit us online to make alternate arrangements.

We are not obligated to renew this offer. Any payments received or credits to the account, which are in addition to the minimum reduction amount will be retained and applied against your full balance.

We're here to help, and we'd like your feedback. Please feel free to reach out to us with compliments, complaints or suggestions at president@rgsfinancial.com.

ECF 1-1.

Underneath this language, the front of the Letter stated in bold: "**NOTICE: SEE REVERSE SIDE OF IMPORTANT INFORMATION.**"  At the top of the back page, the Letter states "**IMPORTANT NOTICE**," followed by the validation notice language required by Section 1692g of the FDCPA.

On August 21, 2017, the Plaintiff filed a complaint alleging that the Letter violated Sections 1692e and 1692g of the FDCPA because, in essence, it failed to disclose interest, late fees, and/or other fees were accruing at the time the Defendant sent the Letter.

Discovery is complete and the parties cross-moved for summary judgment.

## II.  DISCUSSION

### A.  THE STANDARD OF REVIEW.

Fed. R. Civ. P. 56(a) provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

"A genuine issue of fact means that 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting

3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "The evidence of the party opposing summary judgment is 'to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Wright*, 554 F.3d at 266 (parenthetically quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). However, to defeat a motion for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**B. AS TO THE FAIR DEBT COLLECTION PRACTICES ACT.**

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (noting that the purpose of the FDCPA is "to protect consumers from deceptive or harassing actions taken by debt collectors"). Under the FDCPA, "any debt collector who fails to comply with any provision of [§ 1692] with respect to any person is liable to such person[.]" 15 U.S.C. § 1692k(a). The act "imposes civil liability on 'debt collector[s]' for certain prohibited debt collection practices." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576, 130 S. Ct. 1605, 1608, 176 L.Ed. 2d 519 (2010).

4

With regard to FDCPA claims that are based solely on a debt collection letter from a debt collection agency to a consumer, the claim may be dismissed at the pleadings stage. *See Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005).

In order to successfully state a claim under the FDCPA, "'(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements.'" *Schuh v. Druckman & Sinel, L.L.P.*, 751 F. Supp. 2d, 542, 548 (S.D.N.Y. 2010) (quoting *Healy v. Jzanus Ltd.*, 2002 WL 31654571, at \*2 (E.D.N.Y. Nov. 20, 2002)); *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015).

Second Circuit courts evaluate FDCPA claims based upon how the "least sophisticated consumer" would understand the communication at issue. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010). "FDCPA protection 'does not extend to every bizarre or idiosyncratic interpretation of a collection notice' and courts should apply the [least sophisticated consumer] standard 'in a manner that protects debt collectors against liability for unreasonable misinterpretations of collection notices.'" *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233–34 (2d Cir. 2012) (per curiam) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). Thus, the Court will evaluate how the least sophisticated consumer would view the Letter.

## C. AS TO THE PROPRIETY OF THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

The Defendant argues the Court should strike the Plaintiff's summary judgment motion for failure to comply with the Court's individual rules, hereinafter the "Individual Rules." Relevant here, the Individual Rules set forth a procedure parties must follow before filing motions for summary judgment. The movant must first serve a Statement of Material Facts pursuant to Rule

56.1 (a "Rule 56.1 Statement") on the opponent, who must serve a counter-statement within seven days, or by another date specified by the Court. Individual Rule IV.D.(i). After the parties exchange Rule 56.1 Statements, the movant requests a pre-motion conference with the Court. Individual Rule IV.D.(ii). If the Court authorizes summary judgment motion practice, the Court adopts a briefing schedule agreed to by the parties. Individual Rule IV.D.(iii).

According to the Defendant, the Plaintiff failed to serve a Rule 56.1 statement by the June 22, 2018 deadline set by United States Magistrate Judge A. Kathleen Tomlinson ; never submitted a written request for a pre-motion conference; and failed to obtain authorization to seek summary judgment during the September 14, 2018 pre-motion conference, which allegedly solely related to the Defendant's proposed motion. The Plaintiff argues that the Court forgave her failure to meet Judge Tomlinson's deadline by issuing an order directing her to file her Rule 56.1 statement before the pre-motion conference. She also characterizes the Defendant's description of the pre-motion conference as "disingenuous," because she "clearly recalls" obtaining permission to move for summary judgment during the conference.

The Court concurs with the Defendant that the Plaintiff failed to strictly comply with its Individual Rules by failing to timely serve her Rule 56.1 counterstatement or submit a written request for a pre-motion conference. Nonetheless, the Court will entertain the Plaintiff's summary judgment motion because it shares her recollection that it authorized her filing of a cross-motion. Even if the Court agreed with the Defendant's description of the pre-motion conference, it would be hesitant to deny the Plaintiff's motion on that basis alone because such conferences are conducted off-the-record to facilitate settlement discussions. *See United States v. U.S. Currency in Sum of Two Hundred Sixty One Thousand, Four Hundred & Eight Dollars*, No. 00-cv-3028,

2002 WL 827420, at *1 n.2 (E.D.N.Y. May 2, 2002) ("Pre-motion conferences are held off the record.").

The Court has "has broad discretion to determine whether to overlook a party's failure to comply with" its individual rules. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Considering the Plaintiff served her cross-motion concurrently with the Defendant's motion, and the legal issues raised by both motions are identical, the Court finds no surprise or prejudice warranting the extremely punitive remedy of striking the Plaintiff's motion. *See Spira v. Ashwood Fin., Inc.*, 358 F. Supp. 2d 150, 155 (E.D.N.Y. 2005) (deciding motion for summary judgment where cross-movant neglected to submit a Rule 56.1 statement).

Therefore, the Court will proceed to the merits of the parties' cross-motions.

### D. AS TO THE MATERIALS TO-BE-CONSIDERED BY THE COURT.

As a preliminary matter, the Court must determine the scope of the evidence within its consideration when deciding the cross-motions. Specifically, the Defendant cited affidavits from Mike Ryalls ("Ryalls"), its Chief Strategic Officer, and Erin Harness ("Harness"), its Chief Compliance Officer, Director of Administration and Compliance, and Corporate Representative, in its Rule 56.1 Statement. In relevant part, both affidavits state:

> When RGS receives debts from Capital One, RGS does not add any late fees or interests to the debt. The debt remains the same during the entire time RGS has the debt for collection. The amount sought in the Initial Letter remained static and was not subject to change during the time RGS was collecting the debt. This is also reflected in the Account Notes, which shows no interest or fees.

> At no point while RGS has possession of the debt at issue did the amount of the debt change. The "Amount Owed" remained static during the time RGS was collecting the debt, as no interest or fees were or would have been added to the debt during this time.

> Plaintiff could have satisfied the debt by either paying the Amount Owed in full or by paying the Reduction Offer. Either payment plan would have satisfied the debt.

ECF 23-2 ¶¶ 6–8; ECF 27-1 ¶¶ 6–8. The Plaintiff objects and contends that the Court should strike the Ryalls and Harness Affidavits because, first, the Defendant failed to timely disclose Ryalls as a potential witness and, second, they supposedly contradict the Defendant's responses to the Plaintiff's interrogatories and requests for admission.

As an initial matter, the Plaintiff's arguments are procedurally flawed. She seeks preclusion under Rule 37(c), but has filed no motions, formal or informal, affirmatively requesting such relief. The Plaintiff cannot obtain the imposition of sanctions on the Defendant by merely asserting their propriety in an opposition brief. *See Masters v. Wilhelmina Model Agency*, No. 02-cv-4911, 2003 WL 21089073, at *1 (S.D.N.Y. May 13, 2003) (denying request for Rule 37 sanctions raised solely in an affidavit in connection with a motion for class certification). Even disregarding this procedural defect, the Plaintiff's objections are also substantively flawed. For the reasons explained below, the Court will consider the affidavits.

**1. As to the Preclusion of the Ryalls Affidavit.**

Rule 26(a)(1) requires that, at the outset of a civil lawsuit, parties must disclose the name of "each individual ... that the disclosing party may use to support its claims or defenses[.]" Fed.R.Civ.P. 26(a)(1)(A)(i). It also mandates that a party disclose documents that may be used "to support its claims or defenses." Fed.R.Civ.P. 26(a)(1)(A)(ii). Pursuant to Rule 26(e), a party is obligated to timely supplement or correct its initial Rule 26 disclosures, and its responses to interrogatories and document demands, "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(1)(A). The purpose of Rule 26(e) is to prevent the "sandbagging" of a party with new evidence at trial or on a motion. *Ebewo v. Martinez*, 309 F.Supp.2d 600, 607 (S.D.N.Y. 2004).

8

Rule 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). "Substantial justification may be demonstrated where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request, or if there exists a genuine dispute concerning compliance." *Ritchie Risk–Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. Feb. 15, 2012). An omission or delay in disclosure is harmless where there is "an absence of prejudice" to the offended party. *Id.*; *see Aboeid v. Saudi Arabian Airlines Corp.*, No. 10-cv-2518, 2011 WL 5117733, at *2 (E.D.N.Y. Sept. 6, 2011).

Preclusion is a "harsh remedy" that "should be imposed only in rare situations." *Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 186 (E.D.N.Y.2005) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)). While a finding of bad faith is not required to justify preclusion of evidence under Rule 37, a court may consider bad faith in its analysis. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006). Courts enjoy broad discretion in deciding whether and how to fashion a sanction pursuant to Rule 37. *See Design Strategy*, 469 F.3d at 294. In determining whether to exercise its discretion to preclude evidence under Rule 37, courts examine (1) the party's explanation for the failure to comply with the discovery rules; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party as a result of having to prepare to address the new evidence; and (4) the possibility of a continuance. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (citing *Softel, Inc. v. Dragon Med. & Scientific Comm'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)); *Gotlin v. Lederman*, No. 04-cv-3736, 2009 WL 2843380, at *3 (E.D.N.Y. Sept. 1, 2009).

The Court finds the Defendant's failure to include Ryalls in its Rule 26(a) disclosures to be harmless. Although the Defendant's initial disclosures omitted him, Ryalls signed the Defendant's response to the Plaintiff's interrogatories – one of only two documents that the Plaintiff cites as evidence in support of her claims. Therefore, the Plaintiff possesses no reasonable basis for asserting bad faith or prejudice because the very documents she relies on to establish her case disclose Ryalls's existence as a potential affiant. *See Evans v. United States*, 978 F. Supp. 2d 148, 155 (E.D.N.Y. 2013) (Spatt, J.) (finding omission of affiant from Rule 26 disclosures harmless because the plaintiff identified the affiant in interrogatories, which "clearly show[ed] that the Defendant (1) was aware that [she] was a potential witness and (2) had the opportunity to depose her before the close of discovery"); *Morgenstern v. Cty. of Nassau*, No. 04-cv-0058, 2008 WL 4449335, at *3 (E.D.N.Y. Sept. 29, 2008) (denying motion to strike two affidavits offered by defendants in support of summary judgment for failure to disclose under Rule 26 because the plaintiff was aware of the affiants' identities from previous document requests concerning them and was thus on notice that they were potential witnesses).

Therefore, the Court denies the Plaintiff's request for preclusion under Rule 37(c).

**2. As to the "Admissions" in the Defendant's Discovery Responses.**

The Plaintiff contends that the Court should disregard the Ryalls and Hensen Affidavits because the Defendant's responses to the Plaintiff's Rule 36 requests admitted: The credit agreement between Plaintiff and the original creditor provided for the accrual of interest on any unpaid balance; and the credit agreement between Plaintiff and the original creditor provided for the accrual of late fees for any missed payments. ECF 24-5 at 4. According to the Plaintiff, these admissions mean that the Defendant cannot rely on the Ryalls and Hensen Affidavits to dispute that interest was accruing when the Defendant sent the Letter. As support, the Plaintiff cites Rule

36(b), which provides that any "matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed.R.Civ.P. 36(b).

The Court disagrees that the Defendant's admissions have any bearing on the admissibility of the Ryalls and Hensen Affidavits. The admissions only establish the terms of the agreement between the Plaintiff and Capital One. The Ryalls and Hensen affidavits, on the other hand, speak to the actual status of the Plaintiff's debt at the time she received the Letter. It can simultaneously be the case that the Defendant possessed the right to collect interest and late fees from the Plaintiff and that the Defendant did not in fact seek to collect those additional charges. Accordingly, the facts admitted to by the Defendant, that the credit agreement provided for accrual of interest and late fees, do not preclude the Defendant from introducing evidence that interest and late fees were not actually accruing.

Therefore, the Court denies the Plaintiff's request for preclusion under Rule 36.

### E.  As to the Plaintiff's Claims Under Section 1692e.

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. There are sixteen subsections that contain a non-exhaustive list of banned practices, including as relevant here, "[t]he false representation of . . . the character, amount, or legal status of any debt." *Id.* § 1692e(2)(a). A collection notice also violates Section 1692e "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996), *i.e.*, when it violates the "least sophisticated consumer" standard. *See Clomon*, 988 F.2d at 1318.

In *Avila v. Riexinger & Associates, LLC*, 817 F.3d 72 (2d Cir. 2016), the Second Circuit established that a debt collector violates Section 1692e by stating the "current balance" of a

consumer's debt without disclosing that the balance is increasing due to the accrual of interest or fees. It explained that collection notices of that sort are misleading because "[a] reasonable consumer could read the notice and be misled into believing that she could pay her debt in full by paying the amount listed on the notice," whereas, in reality, such a payment would not settle the debt. *Id.* at 76. Therefore, the Second Circuit held that, if the amount of the debt is already increasing due to accruing interest or other charges, collection notices must either "accurately inform[] the consumer that the amount of the debt stated in the letter will increase over time, or clearly state[] that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date." *Id.* at 77.

The Plaintiff contends that that the facts here are identical to *Avila*. In the Plaintiff's view, the credit agreement between her and Capital One provides that the Debt was subject to the accrual of interest and fees; the Defendant lacked the authority to change, waive or modify any terms of that agreement; and thus by necessity the amount of her balance was increasing when the Defendant sent the Letter. Therefore, she believes *Avila* required the Defendant to include disclosures in that regard so as to not violate the least sophisticated consumer standard.

The fatal flaw in the Plaintiff's argument, however, is that the amount of her debt was not increasing. The Ryalls and Hensen affidavits establish that that the Defendant did not add any late fees or interests to the Debt once received from Capital One. In other words, the amount owed by the Plaintiff remained static and the Plaintiff could have satisfied the Debt by either paying the Amount Owed in full or by paying the Reduction Offer. The Defendant thus bore no obligation to provide additional disclosures because the Debt never triggered the initial predicate required for *Avila* to apply in the first place – *i.e.*, "interest and fees that accumulated after the notice was sent but before the balance was paid." *Id.* at 76.

12

The Second Circuit addressed the same facts in *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212 (2d Cir. 2018). The plaintiffs fell into credit card debt with a bank, who placed their debts with a collection agent after they defaulted on their payments. The collection agent sent a series of collection notices to the plaintiffs stating a "balance due" without any statement regarding whether those balances were accruing interests or fees. The plaintiffs brought an FDCPA claim against the collection agent, arguing the absence of additional statements regarding interest and fees made the notices misleading within the meaning of Section 1692e. The district court granted summary judgment for the defendant in light of "unrebutted evidence that neither [plaintiffs'] debt had accrued interest or fees during the time those debts were placed with the company." *Id.* at 213.

The Second Circuit affirmed, holding "if a collection notice correctly states a consumer's balance without mentioning interest or fees, and no such interest or fees are accruing, then the notice will neither be misleading within the meaning of Section 1692e, nor fail to state accurately the amount of the debt under Section 1692g." *Id.* at 215. In doing so, the court recognized the distinction between the letter in *Avila* and the one before it. While the *Avila* letter was "prejudicially misleading" because the plaintiffs had "paid the stated balance of her debt only to find herself still on the hook for an unpaid balance that was accumulating interest," the *Taylor* letter "was accurate: prompt payment of the amounts stated in [the plaintiffs'] notices would have satisfied their debts." *Id.* at 214.

Consequently, the  Second Circuit explicitly rejected the argument that the "notices were misleading because, even if [the creditor] did not accrue post-placement interest on their debts, it nonetheless retained the right to do so." *Id.* at 215. It explained:

> Even if such a right existed, [the defendant's] collection notices were not misleading because no interest or fees were being charged and [plaintiffs] could have satisfied their debts by making reasonably prompt payment of the amounts stated in the notices. In other words, the debts remained static long enough to permit [plaintiffs] to satisfy them through prompt repayment of their respective balances due, and, as we have already

13

> explained, failing to disclose that a debt is static is not misleading within the meaning
> of Section 1692e.

*Id.* Put another way, Collection agents do not have to establish with metaphysical certainty that the

debt could never accrue interest or other fees in order to omit the mention of such charges from a

collection notice. *See Dick v. Enhanced Recovery Co., LLC*, No. 15-cv-2631, 2016 WL 5678556, at *5

(E.D.N.Y. Sept. 28, 2016) ("[T]here is no requirement that every statement in a debt collection notice

include an extra assurance that the fact stated will not change in the future."). Rather, it suffices that

the debt was static *at the time*, even if the creditor could assess additional charges at a later date, so

long as the balance due in the collection notice accurately reflects the amount that would satisfy the

debt through reasonably prompt payment.

Confirming this interpretation of *Taylor*, the Second Circuit in *Derosa v. CAC Fin. Corp.*, 740

F. App'x 742 (2d Cir. 2018) affirmed a summary judgment against an amount-of-the-debt claim based

on a declaration by the defendant collection agency that "the amount [the defendant] sought to collect

remained static, and two debt-collection letters, one of which [the plaintiff] acknowledges receiving,

reflecting that the amount [the defendant] sought to collect did not change" upon receipt from the

original creditor. *Id.* at 743. The plaintiff on appeal argued that whether his account continued to accrue

interest was a disputed factual issue because she furnished a "a generic credit card agreement, which

she alleged showed that the account would continue to accrue interest and fees even in default." *Id.*

The Second Circuit disagreed, explaining that "the fact that the account accrued interest and fees when

being administered by the original creditor is not indicative of how the account would function when

transferred to a debt-collection agency like CAC." *Id.*

In the Court's view, these cases defeat the Plaintiff's theory as a matter of law. Even if Capital

One retained the right to impose additional charges under the credit agreement, the fact remains that

the Plaintiff could have resolved the Debt by paying her then-current balance due of $3,981.89 or the

reduced settlement offer of $2,389.14. Most importantly, this fact is undisputed. The Ryalls and

Hensen Affidavits are the only evidence regarding the actual status of the Debt; the Plaintiff presents no evidence showing that the interest and late fees were in fact accruing or that paying the amounts stated in the Letter would not have discharged her debt. As a result, the Court finds that the Defendant accurately stated the amount of the Debt. *See Homa v. GC Servs. Ltd. P'ship*, No. 17-cv-1661, 2018 WL 4636816, at *5 (E.D.N.Y. Sept. 27, 2018) ("Under *Taylor* and *Avila*, Defendant did not violate its duty to set forth the amount due because Plaintiffs could have satisfied their debts by making prompt payment for the amount set forth in their respective Letters.").

Therefore, the Court grants summary judgment in favor of the Defendant regarding the Plaintiff's claims under Section 1692e.

## F.  AS TO THE PLAINTIFF'S CLAIMS UNDER SECTION 1692G.

Section 1692g requires debt collectors to provide a consumer "validation notice" to consumers in or within five days of the debt collector's initial communication with the consumer. The "validation notice" must include:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Even when the initial validation notice is adequate, a defendant "may still be liable under § 1692g and § 1692e(10) if it sends a subsequent communication within the validation period that 'overshadows or contradicts' such notice." *Barrientos v. Law Offices of Mark L. Nichter*, 76 F.Supp.2d 510, 513 (S.D.N.Y. 1999) (quoting *Russell*, 74 F.3d at 34–35). That is, "[e]ven if a debt collector conveys the required information, the collector nonetheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty." *DeSantis v. Computer Credit Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (quoting *Russell*, 74 F.3d at 35). In that regard, "'[a] debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights.'" *Omogbeme v. Risk Mgmt. Alternatives, Inc.*, No. 01-cv-7293, 2003 WL 21909773, at *2 (E.D.N.Y. Aug. 4, 2003) (quoting *Savino v. Computer Credit Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)). Further, a collection notice may be found to be deceptive if it "can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell*, 74 F.3d at 35 (citing *Clomon*, 988 F.2d at 1319); *see also DeSantis*, 269 F .3d at 161.

The Plaintiff contends that the Letter runs afoul Section 1692g because, first, it misstated the amount of the Debt and, second, because its language overshadows and/or contradicts the language required by Section 1692g(a). In the Court's view, both theories fail.

**1. As to the Amount of the Debt.**

In *Carlin v. Davidson Fink LLP*, 852 F.3d 207 (2d Cir. 2017), the Second Circuit held that a validation notice violated Section 1692g by articulating the amount of the debt in the form of a "Payoff Statement" that allowed the plaintiff to retire his debt by paying the "Total Amount Due" stated in the letter through some future date. That "Total Amount Due," however, was merely an

estimate. The letter noted that "the Total Amount Due may include estimated fees, costs, additional payments, and/or escrow disbursements that will become due prior to the 'Statement Void After' date, but which are not yet due as of the date this Payoff Statement is issued," and that the plaintiff would receive a refund in the amount of any overpayment. *Id.* at 211 However, the notice did not specify what the estimated fees, costs and additional payments were, and thus failed to clearly state the amount of the debt. *Id.* Accordingly, the Second Circuit found the statement to be incomplete because it "omit[ted] information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase." *Id.* at 216.

The Plaintiff analogizes the Letter to the collection notice in *Carlin* because it similarly contained no explanatory language regarding the possibility that her balance might increase. However, the Plaintiff misconstrues *Carlin*, which only applies when the collection agent provides a debtor "an estimated, future amount that [the debtor] *might* owe, rather than the total, present amount that [the debtor] *did* owe." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 241 (2d Cir. 2019). Here, the Defendant provided the Plaintiff with the amount actually owed under a static debt. Her balance was not increasing when the Defendant sent the letter and she knew exactly the amount she would need to pay to resolve the debt, taking the Letter outside of *Carlin's* purview. *See Shevchuk v. Advanced Call Ctr. Techs., LLC*, No. 18-cv-00894, 2019 WL 1441129, at *3 (E.D.N.Y. Apr. 1, 2019) ("[W]here, as here, the debt collector has already informed the consumer of the minimum amount she owes at the time of the notice, *Carlin* simply lacks relevance."); *Taubenfliegel v. EGS Fin. Care, Inc.*, No. 18-cv, 2018 WL 3079697, at *3 (E.D.N.Y. June 21, 2018) ("*Carlin* addresses what a letter needs to do when it does not state the minimum amount

owed.... [It] does not add on additional requirements if the letter already states the minimum amount due, rather than an estimate."); *Timoshenko v. Mullooly, Jeffrey*, Rooney & Flynn, LLP, No. 17-cv-4472, 2018 WL 1582220, at \*3 (E.D.N.Y. Mar. 30, 2018) ("The problem with the collection letter in *Carlin* was that it did not clearly communicate the amount of debt due at the time the letter was sent . . . The Collection Letter in this case did state the amount of the debt").

To the extent the Plaintiff contends that the Letter failed to include a breakdown of interest and late fees already accrued, which is an argument not clearly presented, Second Circuit precedent establishes that "a debt collection letter that informs the consumer of the total, present quantity of his or her debt satisfies Section 1692g, notwithstanding its failure to inform the consumer of the debt's constituent components or the precise rates by which it might later increase." *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d at 241.

Therefore, the Court grants summary judgment in favor of the Defendant regarding the Plaintiff's amount of the debt claim under Section 1692g(a).

**2.  As to Whether the Collection Notice is Overshadowing or Contradictory.**

The Plaintiff argues that the statements in the letter overshadow the Plaintiff's validation rights because: (1) Defendant's settlement offers do not state a date by which payment must be made; (2) the Letter emphasizes the demand for payment; (3) the validation language is obscured by the demands for payment which appear before, alongside and below the validation language; and (4) the Letter's contradictory statements would be confusing to the least sophisticated consumer.

The Plaintiff's conclusory allegations do not accurately set forth the actual content of the Letter. The Letters merely described the nature of the Debt; explained the various methods available for resolving the Debt; provided the Defendant's contact information; and then in bold-

18

face type advised the Plaintiff as to her validation rights under Section 1692g. It neither demanded

immediate payment nor payment before expiration of the 30-day validation period. It did not

threaten any action if payment was not received. It did not emphasize any particular action or form

of communication. And it did not present the Section 1692g language any differently than it

presented any other information on the letter.

As a result, the Letter is plainly distinguishable from the barrage of cases set forth in the

Plaintiff's briefs without any explanation of their relevance or comparison to the relevant facts.

Each case contained coercive or obfuscatory language which is notably absent from the Letter. *See*

*Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 359 (E.D.N.Y. 2013) (finding the letter

contradicted a portion of the validation notice stating "that a consumer must write to dispute the

debt or obtain certain information" by "by specifically requesting that Plaintiff refrain from

correspondence by mail"); *Sharpe v. Midland Credit Mgmt.*, 269 F. Supp. 3d 648, 656 (E.D. Pa.

2017) (finding overshadowing based on "the Letter's confusing and contradictory instructions with

respect to the location of the debtors rights, coupled with the small and inconspicuous text of the

validation notice itself"); *Oberther v. Midland Credit Mgmt., Inc.*, 45 F. Supp. 3d 125, 131–32 (D.

Mass. 2014) (concluding that the statement describing what a consumer "need[s] to do to stop this

process from continuing" overshadowed by providing only two options for preventing referral,

without providing the additional option of disputing the debt); *Gammon v. Joseph H. Belzer, P.A.*,

No. 96-cv-5936, 1997 WL 189291, at *4 (N.D. Ill. Apr. 11, 1997) ("[D]ebt collection letters which

have been found to violate § 1692g . . . contain misleading, confusing and often threatening

language, which could intimidate an unsophisticated consumer"); *Unger v. Nat'l Revenue Grp.,*

*Ltd.*, No. 99-cv-308, 2000 WL 1897346, at *3 (E.D.N.Y. Dec. 8, 2000) (finding overshadowing

based on the letter stating "'Payment in full is due now,' . . . followed by language that both

confuses the validation language substantively and appears in larger print structurally"); *Sokolski v. Trans Union Corp.*, 53 F. Supp. 2d 307, 311, 313 (E.D.N.Y. 1999) (finding overshadowing based on statements in the letter stating "[t]o avoid damaging your credit record, please pay the amount at once" and "[f]or your own benefit, please protect your credit record by paying now"); *Barrientos*, 76 F. Supp. 2d at 514 (finding overshadowing based on statements in letter that the defendant was authorized "to take any lawful action we deem necessary to collect this debt," and urging the plaintiff to "make payment today so we can put this matter to rest").

The facts here more closely resemble the sort of garden-variety settlement offers which routinely withstand scrutiny under the FDCPA. *See, e.g.*, *Lerner v. Forster*, 240 F. Supp. 2d 233, 238 (E.D.N.Y. 2003) ("[I]t does not follow that simply because a collection letter instructs a consumer to contact a debt collector that the validation notice is necessarily overshadowed or contradicted."); *Harrison v. NBD Inc.*, 968 F. Supp. 837, 848 (E.D.N.Y. 1997) (finding that a "claim for overshadowing . . . premised solely on [the] offer of a special discount if the debt is paid within the 30-day validation period" was "insufficient to state a claim upon which relief can be granted"); *Stark v. RJM Acquisitions LLC*, No. 08-cv-2309, 2009 WL 605811, at *5 (E.D.N.Y. Mar. 9, 2009) (finding "as a matter of law, that a settlement offer contained in a debt collector's initial communication with a debtor does not overshadow or contradict a validation notice contained in that same communication"); *Soffer v. Nationwide Recovery Sys., Inc.*, No. 06-cv-435, 2007 WL 1175073, at *5 (E.D.N.Y. Apr. 19, 2007) (rejecting argument that "the mere inclusion of a settlement offer in a debt collection letter containing a validation notice would constitute a *per se* violation of the FDCPA"); *Omogbeme*, 2003 WL 21909773, at *3 (finding inclusion of settlement offer with several "payment coupons" in initial communication "cannot be seen as overshadowing the contents of the included validation notice").

Therefore, the Court grants summary judgment in the Defendant's favor regarding the Plaintiff's overshadowing claim.

### III.  CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's motion for summary judgment, grants the Defendant's motion for summary judgment in its entirety, and dismisses all of the Plaintiff's claims. The Clerk of the Court is directed to enter judgment for the Defendant and to close this case.

It is **SO ORDERED**:

Dated:  Central Islip, New York

September 6, 2019

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge